# CHARLESTON.

GOODMAN *et al.* v. HENRY *et al.*

Submitted Jan 22, 1896—Decided Dec. 2, 1896.

1. DEED OF TRUST—PREFERENCES IN DEED OF TRUST.
   In a deed of trust for the benefit of all creditors, any preference must be plainly expressed.

2. ATTACHMENT—PARTNERSHIP—NON-RESIDENT PARTNER.
   The non-residence of one partner will not be ground for attachment against the firm, to the prejudice of social creditors.

3. ATTACHMENT—PARTNERSHIP—NON-RESIDENT PARTNER.
   The material facts stated in an affidavit must be such as to show the ground of attachment to which they relate. A mere statement that a debtor has conveyed or attempted to convey his property with intent to defraud is not enough. There must be facts and circumstances given to sustain the charge of fraud.

4. ATTACHMENT—AFFIDAVIT—MATERIAL FACTS.

A statement of material facts in an affidavit for attachment must be certain and definite, in a legal point of view, so as to inform those entitled to defend the attachment what particular facts they must repel.

5. ATTACHMENT—SUPPLEMENTAL AFFIDAVIT—MATERIAL FACTS.

The provision in section 1, chapter 106, Code, allowing time to file supplemental affidavit of other material facts to show ground of attachment, is remedial, and should be liberally construed. It should be applied with the same liberality as the law of amendment of pleadings.

6. ATTACHMENT—AMENDMENT OF AFFIDAVIT.

Can such amendment be made to the prejudice of a second lien by deed of trust or attachment? Court equally divided on this question.

A. W. REYNOLDS for plaintiff in error, cited 38 W. Va. 596, 604.

DOUGLASS & McNUTT for defendants in error, cited Code, c. 106, s. 23; 35 W. Va. 422; 36 W. Va. 22; 21 W. Va. 211; 10 W. Va. 130.

BRANNON, JUDGE:

Goodman Bros. & Co. brought an action in the Circuit Court of Mercer county against Henry & Linkous, and issued an attachment, which was levied on a stock of store goods; and, on the next day after the levy, Henry & Linkous conveyed the goods by deed of trust for the benefit of all their creditors.

Afterwards Henry & Linkous confessed judgment in said action, and the goods were sold under the court's order, as perishable, and, while the fund from their sale was yet in the sheriff's hands, Meyer, Reinhard & Co. and several other firms filed their petition, stating themselves to be creditors of Henry & Linkous, entitled to participate under said trust in the assets by it conveyed; alleging that the affidavit on which the attachment issued was insufficient, and the attachment also; and praying that they be admitted to defend the attachment, as provided in section 23, chapter 106, of the Code, and that the affidavit and attachment be quashed. The court refused leave to file statements of supplemental facts. They were quashed, and Goodman Bros. & Co. sued out this writ of error.

Plaintiffs say that their demurrer to the petition asking leave to defend the attachment ought to have been sustained, and that the creditors filing it ought not to have been allowed to contest the attachment. They say the trustee, not the creditors, ought to have filed the contest, as he would make distribution if the attachment were quashed, and the court, without his presence, could not distribute the fund. This is not a question of legal title, to call for the trustee to file the petition, as holding legal title under the trust. The statute says that "any one interested" in the property levied upon may file a petition stating "a claim thereto, or an interest in or lien on the same under any other attachment or otherwise." Surely the real beneficiaries under a deed of trust—those interested more than the trustee having only naked legal title—are embraced by the very letter and the spirit and object of this statutory provision, so broad in its language. And the position contended for would make this a chancery suit to marshal and administer, whereas it only sought to quash the attachment, free the property from its lien, and then the deed of trust would operate with full sway, and the property would be disposed of under it according to law. The court could, if the attachment failed, direct the fund to go to the trustee, though not a party.

Plaintiffs next say that these creditors could not unite in one petition. This is but a technical objection, at most, and this being an informal statutory proceeding, not a formal pleading in a formal suit, we must treat it as remedial, and not overthrow it on technical grounds; but, indeed, I see no objection to the union of these creditors in this attacking petition, because they all united in a common attack on one ground common to all, and all derived rights under one and the same deed of trust. Is it not preferable they should unite, under such circumstances?

Next, the plaintiffs say that these creditors are estopped by the deed of trust itself from contesting the attachment, since, as they claim under it, they must obey it, and that it recognized the attachment lien by the provision securing all creditors "according to the respective rights and priorities of said creditors giving no priority or preference to any." The plaintiff's lien is not, by name, preserved. I

do not think it was intended to prevent the creditors from resistance to an invalid lien, though *prima facie* good and colorable. Preferences in assignments for creditors must be distinctly declared, as they are disfavored in law. 1 Am. & Eng. Enc. Law, 862; Burrill, Assignm. § 116. And observe that the close of the clause above quoted shows that it was not intended by the deed in itself to originate or create a preference, as it says so; thus leaving us impressed with the belief that it did not design to enforce any, but to leave any preference which might be claimed to stand on its own strength in law. It was not intended to bar a creditor under it from contesting a preference set up by another.

Plaintiffs complain that the court quashed the affidavit on which the attachment issued. The affidavit specified two grounds of attachment—First, the non-residence of one of the two members of the debtor firm. His non-residence would not sustain the attachment against social assets, to the prejudice social creditors. *Andrews* v. *Mundy*, 36 W. Va. 22 (14 S. E. 414). The other ground of attachment is that Henry & Linkous were about to convert their property into money or securities with intent to defraud their creditors; and, as material facts to sustain this ground of attachment, the affidavit states that "the defendant Moses Henry has already sold his real estate in Mercer county, and said defendants Henry & Linkous have, made an effort to sell and convert their personal property in said county into money or securities with intent to defraud their creditors." I am forced to the conclusion that this affidavit in the statement of the material facts is bad. In the first place, an attachment is a harsh proceeding, governed by strict tests, and not treated with liberality. The material facts required to be stated in the affidavit by section 1, chapter 106, of the Code, are the evidence to prove the ground of attachment. They must, regarded as evidence, be sufficient to prove the proposition asserted as a ground of attachment; here—the fact that defendants were about to convert their property into money or securities with intent to defraud their creditors; and, failing to show that fact, the attachment must be quashed, from the face of the affidavit alone, by the letter of

section 19. Take those facts as true; do they show such fraudulent conversion? It would not be sufficient for even a bill in equity based on a fraudulent conveyance, for it is not sufficient merely to allege a conveyance, and that it was made with intent to defraud; for the assertion of fraudulent intent may be only the expression of opinion, and facts to reflect that intent ought to be given. *Shoe Co.* v. *Haught*, 41 W. Va. 275 (23 S. E. 553); 8 Am. & Eng. Enc. Law, 776, 243. This affidavit falls under that rule, as it simply charges a sale by one partner, and an attempted sale by the firm, with fraudulent intent. This rule has been, in terms, applied to attachments, in the holding by this Court, that an affidavit must state facts showing the ground of attachment to exist, and that when it states acts, such as conveyances or sales, which are not necessarily fraudulent, though it allege that they were made with intent to defraud creditors, without more, it is bad. *Hale* v. *Donahoe*, 25 W. Va. 414. Again, the affidavit has no legal certainty in the facts it attempts to state, wanting "time, place, and circumstance," which ordinary rules of pleading would condemn in a declaration. What particular real estate did Henry sell? To whom? Where? What property did Henry & Linkous attempt to sell? To whom, and when? What was the act showing the fruitless attempt to convert? The affidavit does not say. Those entitled to contest the attachment have the right to know what they have to meet—what they must direct their evidence to in order to disprove the basis of fraud. In *Sandheger* v. *Hosey*, 26 W. Va. 221, Judge Snyder said that the material facts stated in the affidavit "must produce in the mind of the court the conclusion that the ground for the attachment exists. The requirement is intended to protect the debtor against an abuse of the attachment law. The facts must be capable of denial and disproof, and must, of themselves, show an improper, illegal, or fraudulent act; and they must exclude every reasonable conclusion that the act was proper and innocent. If they leave it doubtful whether the act alleged was fraudulent or innocent, the affidavit will be insufficient. An affidavit that the defendant did an act which, of itself, does not show a fraudulent intent, can not certainly establish such intent. It is the fraud-

ulent act and intent of the defendant to withdraw his effects from the reach of the creditors that give the right to attachment, and, consequently, unless both such act and intent are deducible from the material facts stated, the affidavit is insufficient. *Delaplaine* v. *Armstrong*, 21 W. Va. 211."

Lastly, plaintiffs complain that the court refused to give leave to file a supplemental affidavit stating other facts coming to their knowledge since the filing of the affidavit, to show the ground of attachment. Section 1, chapter 106, Code, gives "right" to file this supplemental affidavit. Notice that "right" is the word used, not "the court may grant leave," or such words. The law of attachments, unrelieved by statute, is rigid—especially so as to affidavits on which they stand. It is easy to make a slip. And attachments are generally sued out in haste, before the affiant has had time or opportunity to find out all the facts touching the action of the fraudulent debtor. His affidavit as to those facts, dependent always on inquiry and dilligent investigation, requiring time, may be often short of the measure of the law. The legislature has stepped in with an indulgence here, to save the effort of a just and dilligent creditor to secure his debt from total failure, and generally his debt from loss. We must apply this indulgence with liberality, as said by Judge Holt in *Crim* v. *Harmon*, 38 W. Va. 604 (18 S. E. 753) "to advance the remedy and suppress the mischief intended to be remedied." It was moved by a desire to mollify the rigor of the rule above stated. The request for leave to file this supplemental affidavit was not too late. On 21st February the plaintiff demurred to that petition, and the demurrer was overruled 22d February; and on the latter day the plaintiffs raised the question whether the creditors could defend against the attachment, and the court held that they could; and then came a motion to quash the affidavit, which was that day sustained; and next day, before entry of judgment quashing the attachment, this motion to suspend judgment and allow time to file the supplemental affidavit was made. Now, the demurrer and right of plaintiffs to contest the affidavit were not settled till 22d February. Till then, the plaintiffs could not tell what would be the ruling of the court. The motion to

quash the affidavit was only made the day before. True, the petition of the creditors asking to be admitted to defend the attachment suggested the deficiency of the affidavit; but can we hold that upon the first suggestion of deficiency the party must know the law, anticipate what will be the ruling of the court upon a question of law, and, confessing the defect of his affidavit, get up a new one? The practice as to other pleadings is to await the court's opinion, and then amend to meet its requirements. Why not apply this practice in this matter? Why show less liberality here? No want of diligence on the plaintiffs' part has been shown. The word "objection," in the statute, does not tie us down to say that it means an objection by the party, rather than an objection of the court to act further on the affidavit. Could it hurt the other side to give this further time? Not in the eye of the law, if the facts really sustained the attachment. The Iowa statute says, "At any time when objection is made (plaintiff) shall be permitted to amend any defect in the petition, affidavit," etc., and it is there held not too late to amend after motion to quash. *Magoon* v. *Gillet*, 54 Iowa 54 (6 N. W. 131); *Stout* v. *Folger*, 34 Iowa 71, 77. It is no matter that such amendment affects the deed of trust lien. The statute says, in words, that "the supplemental affidavit shall be taken as a portion of the original"; that is, as if its matter had been in it from the first. Even without this clause, the amendment would operate from the first. *Kuhn* v. *Brownfield*, 34 W. Va. 252 (12 S. E. 519); Hogg, Pl. & Forms, § 192. Where an attachment is, for any cause, void, and not merely voidable, it can not be amended, either against the defendant or an intervener or subsequent creditor. *Durham* v. *Heaton*, 81 Am. Dec. 275; *Barber* v. *Swann*, 61 Am. Dec. 124. But in this case there was an attempt to comply with the law requiring material facts to be stated. That attempt or step was merely defective or inadequate; in other words, erroneous, not wholly void, and therefore amendable, under the statute. *Hogue* v. *Corbit* (Ill. Sup.) 41 N. E. 219; 3 Enc. Pl. & Prac. 14, note 2; *Allen* v. *Brown*, 4 Metc. (Ky.) 342. Where the case is one proper for amendment, subsequent attaching creditors can not take advantage thereof. Note to

*Barber* v. *Swann*, 61 Am. Dec. 125; *Wright* v. *Hale*, 2 Cush. 486; *Sannoner* v. *Jacobson*, 47 Ark. 31 (14 S. W. 458); 1 Enc. Pl. & Prac. 681, note 1; *Henderson* v. *Stetter*, 31 Kan. 56 (2 Pac. 849); *Leppel* v. *Beck*, 2 Colo. App. 390 (31 Pac. 185, 187) at close of opinion. If an affidavit for an attachment omits to state the grounds of the action, the court is without jurisdiction, and the affidavit can not be remedied. The attachment must be set aside. If, however, it specifies any of the statutory grounds for issuing the writ, however defectively stated, it will not be void because of such defect, but may be perfected by such amendment. 1 Shinn, Attachm. § 142. But in this case there is a statement of the ground of attachment; only the facts to show that ground are inadequate. "Amendment or mere irregularity in attachment proceedings relates back to the beginning, and preserves the priority of the attachment over other liens which took effect before amendment, but after original attachment." 1 Shinn, Attachm. § 406. In *Haven* v. *Snow*, 14 Pick. 28, the court said that "amendments in form merely will not dissolve an attachment so as to let in subsequently attaching creditors, or discharge bail. To have this effect, the amendment must be such as may let in some new demand or new cause of action." Approval in *Wood* v. *Denny*, 7 Gray, 542. This principle is well stated in *Heidel* v. *Benedict* (Minn. 1895) 63 N. W. 490, where it is admitted that an amendment not bringing in a new cause of suit will not give a subsequent attaching creditor precedence. So in *Tilton* v. *Cofield*, 93 U. S. 169. In *Cook* v. *Mining Co.* 114 N. C. 619 (19 S. E. 664) it is held that "an amendment of an insufficient affidavit in attachment relates back to the beginning of the proceedings, and no rights based on such irregularity can be acquired by third parties by subsequent attachments intervening between the original affidavit and the amendment," The court said that the design of amendment was to cure irregularity, in furtherance of justice, and the amendment had "relation back to the beginning of the proceeding sought to be amended," and upheld the lien from the first. All amendments prejudice third persons in some instances, yet, as well expressed in *Greene* v. *Cole*, 13 Ired. 425, "courts have pow-

er to amend their process and records, notwithstanding such amendments may affect existing rights." Ruffin, C. J. said (what is applicable to the argument in this case) that the amendment harms third parties, "but the argument must fail, since it goes to the whole power of amendment, as the very necessity for amending arises out of the invalidity of the proceeding unless amended, and every amendment must affect the rights of persons. But it is among the most beneficial powers of courts, intended and usually exercised to further justice, and sustain what has been done under supposed authority of law. Every person must be understood to act with a knowledge that the courts can, and, in cases deemed proper, will, amend their records and processes to promote justice," *etc.* I will add that this amendment was asked under a statute existing before the rights of Meyer, Reinhard & Co. arose, and the right to amend, in the plaintiffs, was paramount to theirs. They took their right subject to this right of amendment given the plaintiffs by law. A Kentucky case makes the distinction that an amendment under statute of an affidavit will be good against defendant, but not against a later attaching creditor. *Bell* v. *Hall,* 2 Duv. 288. I see no other case. It is a distinction not logical. If the amendment has any force, it being part of the original affidavit, it would be good against all persons. The supplemental affidavit is only a further showing of evidentiary facts existing at the date of the attachment justifying its issuance. It brings in no new cause of action. If the construction I contend for is not to be given the statute, what good will it do in most cases? The other contention would do the plaintiff no more good than would a second attachment, which he could sue out any time. By allowing amendment, the legislature meant something—meant to save him his place, and not put him in the place of another attachment. It is a remedial provision, and ought to be so construed as to advance the remedy and do away with the harsh rule before prevailing. It does not say that its benefit shall be limited to the case as between the plaintiff and defendant, but simply says that the plaintiff may cure his affidavit, as if he had done so at the start. A court ought

not to insert such exception. This provision existing when the second creditor attaches, he does so as much subject to this provision as the debtor. You might just as well say that ordinary statutes of amendment of declarations and pleadings are limited in their effect to the plaintiff and defendant. Can you not, under them, amend a declaration in an attachment case, and cure a defect which would otherwise overthrow the suit? It makes no difference how this would result prejudicially to a second attachment.

But upon this question, whether the supplemental affidavit can give continued priority of lien to the attachment over the deed of trust creditors, the court is evenly divided; Judge HOLT and myself holding that it does, and Judges ENGLISH and DENT holding that, while the amendment continues the lien as against the debtor, it does not to the prejudice of the deed of trust creditors.

By equal division of the Court the judgment is affirmed.